### COWELL *v.* SESSIONS and another.

*(Circuit Court, D. Connecticut. July 25, 1883.)*

**1. PATENTS FOR INVENTIONS—TRUNK FASTENINGS—TAYLOR PATENTS—INFRINGEMENT—SEMPLE AND LOCKE REISSUES.**

Reissued letters patent, dated December 10, 1878, issued to John J. Cowell, as assignee of Edward Semple, and reissued letters patent, dated December 10, 1878, issued to John J. Cowell, as assignee of John C. Locke, relating to trunk fastenings or catches, compared with the Taylor patents, issued July 9, 1872, and February 18, 1878, and *held*, that the original Semple and Locke patents were not infringed by the Taylor patents, but that the claims in the Semple reissue, and the first and second claims in the Locke reissue, were infringed thereby; but that, as the claims in the reissue unduly expanded the original patents, they were void, and the bill should be dismissed as to them.

**2. SAME—RICE PATENT.**

Letters patent issued to Eliakim Rice, dated March 27, 1877, for an improvement in trunk fastenings, *held*, not to be infringed by the Taylor patent of September 21, 1880, which is upon a different principle from the Taylor invention of 1872 and 1878.

In Equity.

*Albert H. Walker*, for plaintiff.

*Charles E. Mitchell* and *Benj. F. Thurston*, for defendants.

SHIPMAN, J. This is a bill in equity to restrain the alleged infringement by the defendants of reissued letters patent, dated December 10, 1878, to the plaintiff, as assignee of Edward Semple; also of reissued letters patent, dated December 10, 1878, to the plaintiff as assignee of John C. Locke; also of letters patent to Eliakim Rice, dated March 27, 1877,—all relating to the trunk fastenings or trunk catches. The original Semple patent was dated February 16, 1868, and the original Locke patent was dated March 21, 1871. The bill also included allegations in regard to the infringement of letters patent to E. A. G. Roulstone, dated October 30, 1866, for an improvement in traveling bags; but, on the hearing, it was conceded that the plaintiff had not such a title to this patent as to enable him to main-

tain a suit for infringement. The original Semple specification says that his invention consisted "in providing the corners of the cover and of the box of trunks with metallic plates, so arranged that when the trunk is closed the plates hold the cover and the box together, preventing any lateral motion of the cover, and stiffening the entire frame of the trunk, each plate being provided with a suitable locking device." A metallic angle-plate was riveted to each front corner of the trunk-box, the side halves of these plates being provided with loops. Another metallic angle-plate was riveted to each front corner of the trunk-cover, the side halves of these plates being provided with lugs or dowels, for the purpose of entering the loops when the trunk is closed, and thus preventing lateral motion of the cover. The front halves of both angle-plates are provided with any suitable device for locking the trunk by means of an independent key. The claim was:

"The angle-pieces, A, provided with the loops, *a*, in combination with the angle-pieces, C, provided with the lugs, *b*, when arranged for operation, in connection with a trunk or similar article, substantially as described."

The first of the two claims of the reissue is as follows:

"(1) In a trunk-cover, a device independent of the trunk-lock, consisting of a plate constructed with a projector substantially parallel with the vertical plane of the plate, combined with a second plate, constructed with a socket to receive said projector, and the said two parts constructed to be applied, one plate to the cover and the other to the body of the trunk, substantially as described."

The second claim is for the same combination, but required that the two plates should be provided with a locking device "to secure said two parts together in their closed condition." The Locke device was constructed as follows, the quotations being from the original specification: There were two straps of hoop-iron, or other metal which would yield readily. Each strap was pivoted to the valance of the trunk, and its upper end rested loosely in the cap or escutcheon, "so as to have a slight degree of lateral play, the object of which was to enable the straps to catch and lock with the catches if the cover becomes racked." The lower ends of the straps were formed dovetailed. The catches were attached to the body of the trunk. The upper part of each was formed with two lugs, which are of the same dovetailed or wedging form as the ends of the straps.

"These lugs start imperceptibly at the top and gradually increase in projection as they go downward, till they pass the extent of the passage of the strap, when they continue around the whole circle of the bottom, but in an oblong form, leaving thereby an open space, *f*, under the end of the strap, for the insertion of the finger to raise the strap to disengage the parts. * * * The operation is as follows: When the cover shuts down, the wide lower end of the strap rides over the wedging lugs, *d, d*, of the catches till the cover is fully closed, when the inclines of the straps and the lugs coincide, and the straps then drop into place and remain locked."

The first claim of the original patent related to the spring straps, and was as follows:

"1. The spring straps, D, D, in combination with the catches, G, G, all constructed substantially as described, for the purpose specified."

The first and second claims of the reissue related to the catching devices. The first was as follows:

"(1) A trunk fastening consisting of a catch and of a plate provided with a spring catching device, one to be applied to the cover, and the other to the body of the trunk, independent of the trunk lock, and adapted to automatically engage with each other in closing the trunk."

The second claim added to the first, "said catch constructed with a cavity for the insertion of the finger to disengage said catching device, substantially as described." The defendants' trunk-fasteners, except Exhibit O, are made under patents to Charles A. Taylor, of July 9, 1872, and February 18, 1878. The 1878 patent is a modification of the method of manufacture of the 1872 device, and is made so as to give the fastener the appearance of a strap and buckle. The 1872 device consisted of two plates attached to the trunk-cover, which locked into corresponding catches attached to the front of the trunk-box. Each catch consisted of a metallic socket, provided with a hinged latch or hook, and with a flat spring, which bore against the lower end of the latch and kept its upper end pressed inward against the socket. The upper end of the latch was provided with a prong, which extended through into the socket. When the trunk-cover was pressed down, the plates or keepers, which were provided with beveled ends and with holes, slid down into the sockets, and the prongs latched into the holes so that the lid was held firmly. In the 1878 patent the latch made in the form of a loop snaps over a projection on the dowel or keeper. The defendants infringed the literal terms of the claims of the Semple reissue, and of the first and second claims of the Locke reissue, but did not infringe either original patent.

The Taylor invention was a trunk-fastener, not a lock; but a fastener to keep the lid in place in case of accidents, and to take part of the strain which would otherwise come upon the lock. It is a combination of dowel or keeper upon the trunk-cover and socket upon the trunk-box, which socket is provided with a hinged, non-elastic latch or catch, which is pressed upon by a spring and snaps into firm engagement with the keeper, the hinged latch being acted upon by the spring to hold it either open or shut. The Semple invention was not a trunk-fastener. It was an angle-plate upon the trunk-cover, provided with a dowel, in combination with an angle-plate upon the trunk-box, provided with a loop into which the dowel entered. The whole arrangement was for the purpose of stiffening the frame, making the upper corners durable, and preventing lateral motion of the cover. The Locke invention was a strap made of some metal which yields readily, and resting loosely in its cap so as to have a slight degree of lateral play, and dovetailed at its lower end, which engages with a peculiarly constructed catch upon the body of the

trunk. The lower end of the strap rides over the dovetailed lugs of the catch till the cover is closed, when the inclines of the straps and the lugs coincide. While this device is a fastener, it bears no substantial resemblance to the rigid keeper of the Taylor invention, which slides into a socket, and engages with a non-elastic hinged latch, actuated by a spring to hold it either open or shut, the latch snapping into firm engagement with the keeper. Each reissue was a similar futile attempt to expand a narrow patent into a comprehensive one, and was intended to cover subsequent inventions which neither Semple nor Locke made or conceived. Unless construed in strict conformity to the actual inventions as described in the specifications, the Semple reissue, and the first and second claims of the Locke reissue, are void, because they are undue expansions of the respective originals, but not by reason of any laches in obtaining a reissue.

Exhibit O was made under the Taylor patent of September 21, 1880, and is upon a different principle from that of the Taylor inventions of 1872 and 1878. It has no spring latch or hinged latch. It consists of two rigid parts—one to be attached firmly to and above the valance of the trunk, the lower end of the piece being in the shape of a flatted dowel pin with a square opening. Quoting now from the description given by Mr. Shepard, the defendants' expert:

"The part to be applied to the body of the trunk consists of two pieces: one piece is a sort of frame, having holes for attaching it to the trunk's body, and in the middle, on the front of its upper end, there is a stud, or projection, beveled on its upper side, which stud is for engaging the hole in the part which is applied to the trunk-cover. By the sides of this stud there are two flanges for engaging the edges of the rigid piece on the trunk-cover and causing it to come into proper position for engagement with the beveled lug. * * * When the cover comes down, the rounded end of the dowel strikes the flanges on the lower member of the fastener, and thereby brings the cover into the proper position laterally, and as the cover comes down, the dowel rides over the beveled face of the lug, and as soon as the opening in the dowel is directly in front of the lug, it snaps into engagement. * * * In order to disengage the fastener, the lever (a lever mounted on a vertical axis and pivoted within the frame) is swung forward to pry the piece which is hung to the cover of the trunk forward, far enough to disengage it."

This fastener was not a success, because there was no spring; and as the keeper or dowel depended upon its position upon the valance, if the valance was out of position, the keeper failed to spring over the face of the lug. It is manifestly unlike the Semple invention, and is, in its construction, upon a different principle from that of the spring dovetailed strap of Locke, which rides into engagement with the wedging faces of the lugs upon the catch.

The Rice invention, the patentee says in his specification, consisted "of a trunk-catch made of three castings, provided with a spring, and capable of being put together without special fitting. It is so constructed that two dowels cast on the portion attached to the cover enter sockets formed in the part attached to the body of the trunk."

In view of the Taylor patent of 1872, and the John Arnold patent of July 1, 1873, it is a narrow patent, and consists in the fact that the parts are assembled without special fitting or riveting, but by sliding the spring into place. It has a spring and hinged latch, and is therefore unlike Exhibit O. The other exhibits which are said to infringe have four castings and a spring, and are not so arranged that they can be held in place without riveting. In the Rice fastener, the latch is so held in place by the spring that, if it was broken, the latch would be liable to drop out of its bearings. This is not true of the defendants' fasteners. In the Rice patent, both fasteners must be held out of engagement by the hand when the lid is lifted. Under the Taylor patent of 1872, and in the defendants' fasteners, the spring holds the latch out of engagement when the lid is to be lifted. There is no infringement of the Rice patent.

The bill is dismissed.